Original proceeding in madamus by the State, on the relation of the Southern States Land Timber Corporation, a corporation, against Gladeview Drainage District and others, to coerce the Everglades Drainage District to pay taxes assessed against it.
Writs denied and respondents discharged.
The Gladeview Drainage District issued bonds and the Everglades Drainage District has become the owner of Section 9, within the Gladeview Drainage District. The bonds are in default and taxes have been levied to pay the bonds. The taxes against the said Section 9 exceed $42,000.
The relator is the owner of the bonds of Gladeview Drainage District and seeks a mandamus to coerce the Everglades Drainage District to pay the $42,000 in taxes. An alternative writ of mandamus was issued requiring respondent Everglades Drainage District to show cause why it should not pay such taxes, and it answered that the $42,000 taxes were in excess of the value of the land and that it would be to the best interest of the trust that such land be abandoned to the extent that the property be left to be subjected to the enforcement in the ordinary manner of the tax liens.
The relator relies upon a pertinent provision of Chapter 9982, as follows: "the Trustees of the Internal Improvement Fund and the State Board of Education are directed to pay the taxes assessed by the Board of Supervisors of Gladeview Drainage District on the lands within said District held by each of them respectively." Section 9, Chapter 9982, Sp. Acts 1923. And the holdings of the Court in the cases of State ex rel. South Florida Conservancy District v. Caldwell, Fla., 35 So.2d 642, and Hunt v. Everglades Drainage District, Fla., 1948, 37 So.2d 534.
However, relator does concede that since the land is not worth the tax liens that:
"In view of these allegations, it must be admitted that the respondents, as trustees of public funds, should not be required to pour such public funds `down a rat hole,' so to speak.
"Under these unusual circumstances, the respondent-trustees should have the power and be allowed to exercise the discretion to abandon the land rather than to pay taxes thereon. Upon these facts, this case may be distinguished from the two cases above cited.
"This case being so distinguished, the Court may very well hold that the statutes of Florida authorize a suit in rem to foreclose tax liens against public lands such as these. Sale of the lands pursuant to such a suit is authorized by unescapable implication from applicable statutory provisions. Such provisions are cited in the respondents' return, namely: Section 298.45, Florida Statutes, as amended, F.S.A. § 298.45; also Section 192.27, which expressly provides for the sale of State lands `for the nonpayment of such taxes or special assessments.' In the case of the tax involved in this proceeding, there can be no sale without a foreclosure proceeding. Therefore, we submit, the Legislature has clearly given its consent to the institution of such a proceeding, even though title to the lands in question is held by the Board of Trustees of the Internal Improvement Fund. *Page 819 
"The public interest will be amply protected by this course of procedure, because Section 192.27, cited in the respondents' return specifically provides, as a condition precedent, that actual notice be sent to the Trustees of the Internal Improvement Fund."
The foregoing observations seem sound and, in view of all the facts and circumstances, the motion for a peremptory writ is denied and the respondents are discharged.
TERRELL, Acting Chief Justice, and CHAPMAN and SEBRING, JJ., concur.